Li YANG, Plaintiff,

v.

BROWN UNIVERSITY, Continuum
Electro Optics and Nabil
Lawandy, Defendants.

Civ. A. No. 91–0654 P.

United States District Court,
D. Rhode Island.

June 15, 1993.

Michael Kennedy, Jeffrey Lichtman, New York City, Alexander G. Walsh, Newport, RI, for plaintiff.

Julius C. Michaelson, Jeffrey S. Michaelson, Michaelson & Michaelson, Beverly E. Ledbetter, Brown University, Providence, RI, for defendants Brown University and Nabil Lawandy.

Stephen A. Izzi, Providence, RI, for defendant Continuum Electro Optics.

### MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Plaintiff Li Yang appeals from an order of Magistrate Judge Boudewyns precluding her from offering the testimony of her principal expert witness at the trial of this matter. Magistrate Boudewyns precluded the expert's testimony as a sanction, pursuant to Fed.R.Civ.P. 37(b)(2)[1], for the failure of plaintiff's counsel to provide a portion of an interrogatory answer. For the reasons stated below, I decline to sustain the Magistrate's sanction.

### I.

Plaintiff Yang, a Brown University ("Brown") physics graduate student, severely injured her eyes while operating a laser in a Brown laboratory in January 1991. Plaintiff contends that she was functionally blinded by this accident and that her lost vision cannot be recovered. She brought this action in December 1991 against the laser manufacturer, Continuum Electro Optics; Professor Nabil Lawandy, her doctoral thesis advisor; and Brown. Plaintiff seeks $12 million in damages.

Following plaintiff's initial answers to interrogatories, Brown moved on August 7, 1992, to compel further answers to 17 interrogatories. One of these interrogatories (Number 50) asked plaintiff to name the expert witnesses she intended to call at trial and to state the basis of the expert's opinion. Plaintiff responded to the motion—as she had to the interrogatory—that the information sought did not exist because no expert had been retained. After a hearing, Magistrate Boudewyns denied the motion in regard to all the interrogatory answers except the "expert" interrogatory. The Magistrate ordered plaintiff to answer this interrogatory by December 1, 1992.

Plaintiff furnished a partial answer to the expert interrogatory on December 1, 1992. She identified Professor Myron Wolbarsht of Duke University as an expert who would testify on her behalf. She also stated that Professor Wolbarsht would "testify to current laser safety standards, including those applicable to industry and universities, and whether or not the plaintiff and defendants complied with these standards." Plaintiff did not, however, answer the portion of the interrogatory concerning the content or basis of the expert's opinions. Instead, plaintiff stated that Professor Wolbarsht was "still reviewing the voluminous materials relevant to this case and will form his opinions upon the conclusion of this review. He is available for deposition."

---

1. Fed.R.Civ.P. Rule 37(b) provides in pertinent part:

    **(2) Sanctions by Court in Which Action is Pending.** If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

    \* \* \* \* \* \*

    **(B)** An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

On December 8, 1992, Brown moved for sanctions for plaintiff's failure to fully answer the interrogatory. On the same day, plaintiff's counsel wrote to Brown's counsel requesting a date when the expert could inspect the laboratory site and attempt to recreate the experiment that resulted in plaintiff's injury. Brown's counsel replied by letter on December 16, 1992 that "I have serious doubt that any recreation would be agreeable." The letter did not mention the request to inspect the site. On January 7, 1993, the Magistrate denied the sanction motion, but directed plaintiff to respond fully to the expert interrogatory by February 12, 1993.

On January 9, 1993, plaintiff's counsel again requested by letter that Brown's counsel arrange a site inspection "in the next couple of weeks." Brown's counsel responded in a letter dated January 12, 1993:

> With respect to the inspection, I am conveying your letter to Ms. Ledbetter [General Counsel for Brown University] and will be discussing it with her. One clarification of your letter is that it suggests that I had agreed to the inspection. What I agreed to is that it would not be necessary to make a formal request. I will respond to you *as soon as possible* concerning whether or not the inspection which you proposed is agreeable. (emphasis added).

In late January 1993, the associate of plaintiff's counsel who was responsible for discovery and calendaring in this case abruptly left his employment. Soon thereafter, on February 5, 1993, the wife of plaintiff's counsel discovered a tumor. She underwent many medical tests and ultimately had the tumor surgically removed on February 17, 1993. On the due date for answering the interrogatory, February 12, 1993, plaintiff's counsel stated in a letter to all defendants' counsel that "Dr. Wolbarsht has not been able to complete his work because the Michaelson office [attorneys for Brown] has still not given us a date when we can view the labs, lasers and related tables and equipment."

On February 18, 1993, Brown again filed a motion for sanctions. In conjunction with her opposition to sanctions, plaintiff filed a motion to compel the site inspection. Brown did not object to plaintiff's motion, and Professor Wolbarsht inspected the site on March 30, 1993. He issued his report on April 5, 1993. In a letter accompanying the report, Professor Wolbarsht explained that he had been unable to form a definitive opinion until he had inspected the laboratory and reconstructed as well as possible the physical set-up of the equipment at the time of the incident.

At a hearing on the sanctions motion on April 2, 1993—three days before the issuance of Professor Wolbarsht's report—Magistrate Boudewyns orally ruled that the expert would be precluded from testifying. While plaintiff's motion to reconsider this ruling was pending, the Magistrate issued a one-page written order on April 12, 1993, barring the testimony of Professor Wolbarsht under Fed.R.Civ.P. 37(b)(2). Plaintiff filed her appeal to this Court on April 21, 1993.

## II.

■ Under 28 U.S.C. § 636(b)(1), District Judges may authorize U.S. Magistrates to hear dispositive and non-dispositive pretrial motions. When magistrates rule on non-dispositive pretrial matters, district judges may only review these determinations under a "clearly erroneous or contrary to law" standard. § 636(b)(1)(A). In contrast, when magistrates consider dispositive motions, they are limited to making proposed findings of facts and recommendations to the district court. § 636(b)(1)(B), (C). The district court must then make a "de novo determination" of those portions of the magistrate's recommendations to which a party timely objects. § 636(b)(1).

■ In general, motions for sanctions pursuant to Rule 37 "fall within the scope of section 636(b)(1)(A)'s coverage of pretrial matters." *Zises v. Department of Social Services,* 112 F.R.D. 223, 226 (E.D.N.Y.1986). Thus, in these instances, the district court's standard of review is "clearly erroneous or contrary to law." In the case at hand, however, the Magistrate's order crosses the line from non-dispositive to dispositive decision-making. His ruling vitiates plaintiff's case.

It is tantamount to an involuntary dismissal. As the Magistrate himself acknowledged when making his ruling:

> Any reasonable plaintiff should have appreciated the significant importance of the expertise that's required to present the plaintiff's case. It hasn't been breached [sic], but my reaction is that I think that probably an expert witness is going to be required to present a *prima facie case* in this instance. And that may not be correct, if it's not, then the sting of the preclusion order is not as significant as plaintiff's counsel may fear. April 2, 1993 Transcript ("Transcript") at 39–40 (emphasis added).

Under these circumstances, I believe this Court is obliged to treat the Magistrate's sanction as a recommendation to this Court and to review the record *de novo*. As one leading treatise states: "[W]hile discovery generally is committed to the magistrates for final directions in any action where the district judge refers discovery supervision, the imposition of case-dispositive sanctions under Rule 37(b) is considered in most courts to be subject to an implied limitation as a form of dispositive motion comparable to the 'involuntary dismissal' listed in § 636(b)(1)." 7—Pt. 2 James W. Moore et al., *Moore's Federal Practice* § 72.04, at 72–65 [2.–4] (2d ed. 1993). *See Ocelot Oil Corp. v. Sparrow Industries,* 847 F.2d 1458, 1462–64 (10th Cir. 1988) (because the striking of pleadings by magistrate under Rule 37 constituted involuntary dismissing of action, district court was required to make *de novo* review of the order); *Zises,* 112 F.R.D. at 226 (district court must apply a *de novo* standard of review to magistrate's dismissal with prejudice under Rule 37); *Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1065 (2nd Cir.1979) (where magistrate's order under Rule 37 barring introduction of evidence was equivalent to dismissal of claim, order was submitted to district court for approval).

■ From my vantage point, the exclusion of Professor Wolbarsht's testimony is too severe a sanction based upon the facts presented. To be sure, plaintiff failed to comply fully with the two court orders. And plaintiff's counsel acknowledged in his Motion to Reconsider that he "misjudged the momentousness of this interrogatory." But plaintiff's counsel did attempt several times to arrange a visit to the laboratory at Brown before the deadline—a trip Dr. Wolbarsht insisted was necessary for him to form his opinion. Plaintiff's counsel also had to cope with the sudden departure of his associate in late January and his wife's medical crisis in early February.

Moreover, defendants are not completely blameless. It appears that the plaintiff refrained from filing a motion to compel the laboratory inspection based upon the January 12th representations by Brown's counsel that a formal request was unnecessary, and that he would respond as soon as possible as to whether the inspection was agreeable. Brown's counsel later admitted that "I did not get back to them." Transcript at 30.

■ Even assuming the Magistrate's preclusion order should be considered a nondispositive ruling, I believe the Magistrate acted "contrary to law" in precluding the expert's testimony. My reading of existing First Circuit case law reveals that willful or deliberate misconduct is necessary for the preclusion of testimony or the barring of witnesses under Rule 37. In a 1990 opinion, for instance, the First Circuit indicated that preclusion of evidence under Rule 37 is a "grave step[ ]," and " 'by no means an automatic response to a delayed disclosure ... [or] where failure to make discovery [is] not willful.' " *Jackson v. Harvard University,* 900 F.2d 464, 469 (1st Cir.), *cert. denied,* 498 U.S. 848, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990) (quoting *Freeman v. Package Machinery Co.,* 865 F.2d 1331, 1341 (1st Cir.1988)).[2]

As discussed above, plaintiff's actions did not rise to the level of willful behavior. Rather, at worst, counsel was dilatory and negligent (but not grossly negligent) in his duties. The Magistrate made no finding re-

---

**2.** The First Circuit has also suggested that a showing of "willful" conduct—more than mere "fault"—should be present before a sanction of dismissal is imposed on a party that fails to appear at a pretrial conference. *Velazquez–Rivera v. Sea–Land Service, Inc.,* 920 F.2d 1072, 1076–77 (1st Cir.1990).

garding the culpability of plaintiff's counsel other than that his actions constituted "disobedience of an order." Transcript at 33. Apparently, the Magistrate did not believe that the conduct of plaintiff's counsel involved any "willful deception." *Id.*

Brown's reliance on the First Circuit's decision in *Thibeault v. Square D Co.*, 960 F.2d 239, 245 (1st Cir.1992), is unavailing. In *Thibeault*, the Court approved a district court's exclusion of expert testimony at trial without an explicit finding of willfulness or bad faith. The First Circuit limited its holding, however, to violations of the duty to supplement discovery responses under Fed.R.Civ.P. 26(e). As the Court stated: *"[I]n the Rule 26(e) context,* preclusion can be imposed in response to a party's subversion of the trial process, even if the responsible party was guilty of laxity rather than bad faith." 960 F.2d at 245 (emphasis added). Brown offers no support for extending *Thibeault*'s lower culpability standard to the Rule 37 sphere. And without further guidance from the First Circuit, I decline to do so.

### III.

In conclusion, I rule that the testimony of Professor Myron Wolbarsht will be allowed at trial. I feel, however, that some sanction should be levied against plaintiff's counsel in his individual capacity. In fact, plaintiff's counsel has asserted that he alone was at fault and "ought to be personally sanctioned" for his actions. Accordingly, I order plaintiff's counsel to pay a fine of $500.00 to the clerk of this Court. In addition, plaintiff is directed to provide a full and complete answer to the expert interrogatory at issue in this case within 10 days. The discovery period will be extended for 60 days following the receipt of such answer to allow defendants ample time to prepare their case. Pretrial motions and memoranda must be filed within 14 days after the end of discovery.

SO ORDERED.