**DELTA DENTAL OF RHODE ISLAND, Plaintiff,**

v.

**BLUE CROSS & BLUE SHIELD OF RHODE ISLAND, Defendant.**

**C.A. No. 95–0546L.**

United States District Court, D. Rhode Island.

Sept. 26, 1996.

William R. Landry, Blish & Cavanagh, Providence, RI, for Plaintiff.

Steven E. Snow, Partridge, Snow & Hahn, Providence, RI, for Defendant.

### MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This case involves an antitrust action brought by Delta Dental of Rhode Island ("Delta Dental") alleging anticompetitive practices by defendant Blue Cross & Blue Shield of Rhode Island ("Blue Cross") in the market for prepaid dental services in Rhode Island. Delta Dental initiated this suit in Rhode Island Superior Court, relying exclusively on state law in asserting that Blue Cross has engaged in predatory pricing and other exclusionary practices in violation of the Rhode Island Antitrust Act, R.I.Gen. Laws § 6–36–1 et seq. Delta Dental further claims that the challenged practices violate Rhode Island's common law doctrines of unfair competition and tortious interference with contractual relations.

On the motion of Blue Cross, the case was removed to this District Court pursuant to 28 U.S.C. § 1441(b). Subsequently, Magistrate Judge Timothy M. Boudewyns entered an order dated February 22, 1996 remanding the action to the state court, upon a finding that no federal question existed to support jurisdiction under 28 U.S.C. § 1331. The matter is now before this Court on the appeal of Blue Cross from the Magistrate Judge's remand order. For the reasons that follow, the Magistrate Judge's Order is affirmed.

## I. Facts and Procedural Background

The following facts are not in dispute, unless otherwise noted. The somewhat tortured relationship between the parties dates back to Delta Dental's entry into the Rhode Island dental services market in the early 1970's. Because Delta Dental, as a new provider, had little administrative structure to speak of, it turned to Blue Cross' established health care network (which did not at that time include a dental benefits package) to provide the necessary support and administration. In June of 1973, the parties agreed to jointly develop a prepaid dental benefits plan for the Rhode Island market. Pursuant to the agreement between the parties (the "Administrative Agreement"), Delta Dental determined all professional matters regarding the plan's coverage, such as fee schedules and benefits structures. Blue Cross assumed the management duties for the plan, including the maintenance of enrollment records and administration of claims.

The relationship between the parties broke down in the early 1990's. Complaining that Delta Dental was interfering with the effective administration of the plan,[1] Blue Cross terminated the Administrative Agreement on December 13, 1991, effective January 13, 1993. According to Delta Dental, however, Blue Cross' true motive for termination was a desire to develop its own dental benefits plan to compete with the Delta Dental plan. Delta Dental asserted that a program to develop such a competing plan had already been initiated prior to the December 1991 notice of termination, in violation of a noncompetition clause in the Administrative Agreement.

These events culminated in the parties' first trip to this federal court. In 1992, Blue Cross filed an action against Delta Dental here, seeking damages, declaratory relief, and injunctive relief for alleged violations of both federal and state antitrust laws. *Delta Dental of Rhode Island v. Blue Cross & Blue Shield of Rhode Island*, C.A. No. 92–0336L (D.R.I. filed June 22, 1992). At the heart of that case was the assertion that Delta Dental had provided false and misleading information to the dental community and potential customers—first to discourage Blue Cross from entering the market, and then to discourage customers from purchasing Blue Cross' dental plan [2]—all in an effort to protect and maintain its dominance of Rhode Island's dental care financing market.[3] Blue Cross maintained that these and other practices violated sections 1 and 2 of the Sherman Act, 15 U.S.C. § 1 *et seq.*, as well as §§ 6–36–4 and 6–36–5 of the Rhode Island Antitrust Act, *supra*.

Delta Dental denied the allegations in Blue Cross' complaint, and asserted as an additional defense the McCarran–Ferguson Act's "business of insurance" exemption from antitrust scrutiny, 15 U.S.C. § 1012. Moreover, Delta Dental filed numerous counterclaims stemming from the Administrative Agreement, including claims for breach of contract, conversion, breach of fiduciary duty, and intentional interference with contractual and business relations.

This initial dispute was eventually resolved by a settlement approved by this Court on

---

1. Blue Cross asserted that Delta Dental no longer followed its recommendations regarding fee schedules, and further claimed that Delta Dental had hired an outside consultant to take on Blue Cross' management role.

2. Blue Cross formally began competing with Delta Dental upon the January 1993 termination of the Administrative Agreement, and thus filed an

amended complaint in July of 1993 encompassing the post-entry claims.

3. In its complaint, Blue Cross alleged that by 1991 Delta Dental insured 30% of Rhode Island's population, encompassing 70% of the market for Rhode Island dental care financing and services.

April 20, 1994. However, this second round of litigation between the parties commenced in September 1995, when Delta Dental filed the present action against Blue Cross in the Rhode Island Superior Court in and for the County of Providence. The complaint alleges that Blue Cross has engaged in exclusionary and predatory practices since its entry into Rhode Island's prepaid dental benefits market in January 1993. Specifically, Delta Dental asserts that Blue Cross has engaged in illegal cross-subsidization and predatory pricing in an effort to achieve a monopoly. According to the complaint, Blue Cross has deliberately driven dental insurance prices to unprofitably low levels, choosing to operate at a loss in dental insurance while covering these losses with the profits generated by its other health care service plans. Delta Dental avers that Blue Cross is willing to sustain such losses until all competitors, unable to cover similar losses, are driven from the Rhode Island market.

Delta Dental asserts that the challenged conduct violates the Rhode Island Antitrust Act, *supra*. In addition, Delta Dental has asserted claims under the state common law doctrines of unfair competition, interference with contractual relations, and interference with prospective contractual relations, on the theory that Blue Cross has used the challenged practices to take former and prospective customers away from Delta Dental. Blue Cross has filed counterclaims against Delta Dental under federal and state antitrust law, as well as state tort theories of intentional interference with current contractual and prospective business relations.

While Delta Dental's complaint is based entirely on state law, Blue Cross removed the action to this Court under the "artful pleading" doctrine enunciated in *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). The crux of the argument is that while Delta Dental could have brought its claims in federal court under the Sherman Act, it instead chose to bring its claim exclusively under the state antitrust statute, allegedly in order to deprive Blue Cross of certain federal defenses as well as to avoid the *res judicata* effects of

the previous federal litigation between the parties.

After a hearing before Magistrate Judge Timothy M. Boudewyns, the case was remanded to Providence County Superior Court. In his order of February 22, 1996, the Magistrate Judge concluded that: (1) no federal question was presented in the complaint, (2) the "artful pleading" exception to the well-pleaded complaint rule was inapplicable in this instance, and, (3) the action was not barred by the doctrine of *res judicata*, since the present case involved conduct that arose after the settlement of the previous litigation in this Court.

Blue Cross filed a timely appeal from the Magistrate Judge's order remanding the case to state court. After hearing arguments of counsel, the Court took the matter under advisement. The matter is now in order for decision.

## II. The Nature of the Motion to Remand

As an initial matter, this Court must determine the proper standard of review to be applied to this appeal of the Magistrate Judge's remand order. To this end, the Court must decide whether a motion to remand is best characterized as a "dispositive" or "nondispositive" motion within the meaning of 28 U.S.C. § 636(b)(1), Rule 72 of the Federal Rules of Civil Procedure, and Local Rules 32(b) and 32(c).

Under 28 U.S.C. § 636(b)(1)(A), the district court may refer to a magistrate judge for hearing and determination any pending pretrial matter, with the exception of eight motions specifically listed therein:

a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

A magistrate judge's determination of a matter not within the eight exceptions can be appealed to the district court under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A) (1994).

As for the eight motions excepted by § 636(b)(1)(A), the district court may also refer these matters to a magistrate judge under § 636(b)(1)(B). In such cases, however, the magistrate judge may file only proposed findings of fact and recommendations for disposition with the district court. 28 U.S.C. § 636(b)(1)(B) (1994). A party may serve and file objections to the proposed findings and recommendations, which the district court reviews *de novo*. *Id*.

Rule 72 of the Federal Rules of Civil Procedure implements the two-tiered structure outlined by § 636(b)(1); it does so, however, using slightly different terminology. Instead of listing the eight matters excepted in § 636(b)(1)(A), Rule 72 characterizes pretrial motions as either "dispositive of a claim or defense of a party" or not dispositive. For dispositive matters the provisions of § 636(b)(1)(B) apply, by which the magistrate judge files proposed findings and recommendations which the district court reviews *de novo*. Fed.R.Civ.P. 72(b). Conversely, a magistrate judge may determine nondispositive matters by order, appealable under the "clearly erroneous or contrary to law" standard. Fed.R.Civ.P. 72(a).[4]

■ The Court now comes to the question of where a motion to remand fits within the framework established by § 636(b)(1) and Rule 72. While the First Circuit has identified the issue on at least two occasions, in each instance that Court has expressly chosen not to rule on jurisdictional grounds. *See Cok v. Family Court of R.I.*, 985 F.2d 32, 34 (1st Cir.1993); *Unauthorized Practice of Law Comm. v. Gordon*, 979 F.2d 11, 12–13 (1st Cir.1992). The First Circuit did note, however, the split in the case law on whether a magistrate judge has the authority to enter a final order of remand: "While we note the existing and conflicting case law on this issue, we need not enter the fray at this time."

*Gordon*, 979 F.2d at 13. It is against this backdrop of conflicting case law, therefore, that this Court approaches the issue, a matter of first impression in this district.

Most district courts faced with the question have determined that a motion to remand is a nondispositive matter within a magistrate judge's authority to determine by final order under Rule 72(a). *See, e.g., Young v. James*, 168 F.R.D. 24, 26–27 (E.D.Va.1996); *Campbell v. International Business Machs.*, 912 F.Supp. 116, 118–19 (D.N.J.1996); *Banbury v. Omnitrition Int'l, Inc.*, 818 F.Supp. 276, 278–79 (D.Minn.1993); *Jacobsen v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 594 F.Supp. 583, 584–86 (D.Me.1984). Two rationales support these decisions: one focusing on § 636(b)(1)(A), and a second looking to the additional language in Rule 72. The Court considers each approach in turn.

A motion to remand is not one of the matters specifically excepted by § 636(b)(1)(A). Reading this section to provide an exhaustive list of "dispositive" motions, some courts have deemed all non-listed pretrial matters, including motions to remand, nondispositive. *See Vaquillas Ranch Co. v. Texaco Exploration and Prod., Inc.*, 844 F.Supp. 1156, 1160–63 (S.D.Tex.1994) ("Congress had the opportunity to include in that list any motion which it considered to be dispositive, and it did not include motions to remand."); *White v. State Farm Mut. Auto. Ins. Co.*, 153 F.R.D. 639, 642–43 (D.Neb. 1993) ("[H]ad Congress wanted to exempt such an order from the authority of magistrate judges, it knew how to say so specifically.").

Other courts have taken a broader approach, looking beyond § 636(b)(1)(A) to consider whether a motion to remand is "dispositive" under the language of Rule 72. *See Banbury*, 818 F.Supp. at 279; *City of Jackson, Miss. v. Lakeland Lounge of Jackson, Inc.*, 147 F.R.D. 122, 123–24 (S.D.Miss.1993). While those courts consider it relevant that remand orders are not excepted by

---

**4.** Local Rule 32 combines the approaches of both the statute and the Federal Rule, listing the eight exceptions in § 636(b)(1)(A) as well as using the dispositive-nondispositive language of Rule 72. *See* D.R.I.R. 32(b) & 32(c).

§ 636(b)(1)(A), that absence is not critical to their decisions. *Campbell,* 912 F.Supp. at 118–19. Instead, those courts read § 636(b)(1)(A) to provide a floor of eight dispositive motions to be decided under Rule 72(b), so that any other motions "dispositive of a claim or defense of a party" could also fall under Rule 72(b). *Id.*

Even under this broader approach, however, most courts have concluded that motions to remand are nondispositive and thus subject to final determination by a magistrate judge:

> The motion to remand does not reach the merits of the underlying dispute but instead decides only the question of whether removal to the federal court was proper. The parties remain free to litigate the merits of the case following the disposition of the motion, whether in state or federal court.

*City of Jackson,* 147 F.R.D. at 124. *See also Campbell,* 912 F.Supp. at 118–19 (concluding that "remands merely transfer the action to a different forum rather than finally resolving the substantive rights and obligations of the parties.").

On the strength of such arguments, this Court joins the majority and concludes that a motion to remand is nondispositive and can be determined by a magistrate judge by final order. While the Court finds it relevant that motions to remand are not among the motions excepted by § 636(b)(1)(A), this factor serves only as the starting point for this decision. More important is the effect that the disposition of a motion to remand will have on the status of the litigation. As noted by the authorities cited above, a decision on a motion to remand merely answers the question of whether there is a basis for federal jurisdiction to support removal, without reaching the merits of any claims, counterclaims, or defenses. As such, this Court cannot conclude that a remand order is "dispositive of a claim or defense of a party."

The Court does recognize that two district courts have reached the opposite conclusion, *Long v. Lockheed Missiles and Space Co.,* 783 F.Supp. 249 (D.S.C.1992) and *Giangola v. Walt Disney World Co.,* 753 F.Supp. 148 (D.N.J.1990). While noting that a motion to remand is not excepted by § 636(b)(1)(A), the *Giangola* court held that a remand order is the equivalent of an "involuntary dismissal," a matter specifically excepted by § 636(b)(1)(A). *Giangola,* 753 F.Supp. at 152. Therefore, that Court concluded that a remand order, as an involuntary dismissal, is a dispositive matter beyond the authority of a magistrate judge to determine by final order. *Id.; see also Long,* 783 F.Supp. at 250–51 (following *Giangola*).

This Court respectfully disagrees with the reasoning of *Giangola* and *Long.* The first ground for disagreement concerns the nature of involuntary dismissals, as governed by Rule 41(b) of the Federal Rules. Rule 41(b) provides that "a dismissal under this subdivision and any dismissal not provided for in this rule, *other than a dismissal for lack of jurisdiction,* for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits." Fed. R.Civ.P. 41(b) (emphasis added). Under this section, dismissals for lack of jurisdiction are neither Rule 41(b) "involuntary dismissals" nor final decisions on the merits of the parties' claims. Therefore, a motion to remand, which essentially calls for a determination of whether subject matter jurisdiction exists, cannot be termed a dispositive motion. *Accord Young,* 168 F.R.D. at 27 (reading Rule 72 in conjunction with Rule 41(b) to defeat *Giangola* analysis).

Second, while a number of courts have found motions other than those listed in § 636(b)(1)(A) to be dispositive, *Giangola* is distinguishable. In *Woods v. Dahlberg,* the Sixth Circuit found that a magistrate judge's denial of a motion to proceed *in forma pauperis* was the "functional equivalent" of an involuntary dismissal, and thus dispositive. 894 F.2d 187, 187–88 (6th Cir.1990). Similarly, in *Ocelot Oil Corp. v. Sparrow Indus.,* the Tenth Circuit concluded that an order striking a plaintiff's pleadings as a discovery sanction had the identical effect of an involuntary dismissal, and was thus outside the magistrate judge's authority. 847 F.2d 1458, 1461–63 (10th Cir.1988). Read together, these cases offer support for the argument that § 636(b)(1)(A) presents a non-exhaustive list of dispositive motions, and that other motions

that have the identical effect as one of the eight listed motions should also be considered dispositive under Rule 72.[5]

In fact, a judge in this district has endorsed the view that § 636(b)(1)(A) does not present an exhaustive list of dispositive motions. In *Yang v. Brown Univ.*, 149 F.R.D. 440 (D.R.I.1993), the magistrate judge, as a discovery sanction, had issued an order precluding the plaintiff from offering the testimony of her principal expert witness at trial. As the magistrate judge noted in his order, the sanction left the plaintiff unable to present a *prima facie* case, thus, in effect, defeating the plaintiff's claim. *Id.* at 442–43. Reviewing this order, Senior Judge Pettine found that under such circumstances, "the Magistrate's order crosses the line from nondispositive to dispositive decision-making. His ruling vitiates plaintiff's case. It is tantamount to an involuntary dismissal." *Id.*

However, the "functional equivalent" analysis relied upon in *Yang, Woods,* and *Ocelot Oil* is not applicable to remand orders. The motions at issue in those cases effectively terminated the litigation between the parties: in *Yang,* the magistrate's order rendered the plaintiff unable to present a *prima facie* case; in *Woods,* the denial of in forma pauperis status left the plaintiff unable to pursue his claim; the striking of pleadings with prejudice in *Ocelot Oil* had the result of dismissing the plaintiff's action with *res judicata* effect. In each instance, the magistrate judge's order had an sense of finality to it—a finality that is simply not present with an order remanding a case to a state court forum, where the parties will be allowed to assert all claims and defenses. Thus, even accepting that § 636(b)(1)(A) does not provide an exhaustive list of dispositive motions, the Court nonetheless holds that a motion to remand is nondispositive.[6] Therefore, a magistrate judge may determine such by final order. The Court thus will review Magistrate Judge Boudewyns' order of February 22, 1996 under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); D.R.I.R. 32(b).

## III.  Review of the Magistrate Judge's Decision

Under 28 U.S.C. § 1441(a), a civil action filed in a state court may be removed to a federal district court if the action is one over which the district courts of the United States have original jurisdiction.[7] If at any time after removal it appears that the district court lacks subject matter jurisdiction, the case shall be remanded to the state court as improperly removed. 28 U.S.C. § 1447(c).[8] Magistrate Judge Boudewyns made such a finding in this case, remanding the case to state court for lack of subject matter jurisdiction. The Court now considers whether the magistrate judge's factual findings were clearly erroneous, or whether his legal conclusions were contrary to law.

5. *See also* 12 Charles A. Wright, Arthur R. Miller and Frank W. Elliott, Federal Practice and Procedure § 3076.5 (Pocket Part 1996) ("Rule 72 is in keeping with the legislative intent that, at the very least, the eight motions listed in the statute will be governed by the procedures and *de novo* review of Rule 72(b).").

6. The Court also notes that *Giangola* has recently been called into question by a subsequent case from the same district. In *Campbell v. International Business Machs.*, the district court discusses a post-*Giangola* Third Circuit decision characterizing an order as "dispositive" on the ground that " 'it determine[d] with finality the duties of the parties.' " 912 F.Supp. 116, 119 (D.N.J. 1996) (quoting *N.L.R.B. v. Frazier*, 966 F.2d 812, 817 (3d Cir.1992)). In finding that remand orders are nondispositive, the district court stated its belief that "*Giangola* would have been decided differently if *N.L.R.B. v. Frazier* had been on the books." *Campbell*, 912 F.Supp. at 119.

7. "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a) (1994).

8. "A motion to remand the case on the basis of any defect [other than lack of subject matter jurisdiction] must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.... The State court may thereupon proceed with such case." 28 U.S.C. § 1447(c) (1994).

The parties are both Rhode Island citizens for the purposes of diversity jurisdiction under 28 U.S.C. § 1332, as each is a corporation organized under Rhode Island law and each maintains its principal place of business in Providence, Rhode Island.[9] Accordingly, removal of this case to federal court could only be based on the "arising under" federal question jurisdiction of 28 U.S.C. § 1331.[10] The Court concludes that the case does not arise under federal law, and thus affirms the magistrate judge's order remanding the case to state court.

■ The principles which guide this Court's exercise of federal question jurisdiction are familiar, and can be stated here with little additional comment. "A suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne and Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916) (Holmes, J.). The presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint" rule, which applies to the original jurisdiction of this Court as well as its removal jurisdiction. *See Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936). Under the rule, "whether a case is one arising under [federal law] ... must be determined from what necessarily appears in the plaintiff's statement of his own claim." *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914); *see also Gully*, 299 U.S. at 112, 57 S.Ct. at 97 ("[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action."). An action arising under state law cannot be removed solely because a federal right or immunity can be raised as a defense. *Tennessee v. Union and Planters' Bank*, 152 U.S. 454, 459–61, 14 S.Ct. 654, 655–57, 38 L.Ed. 511 (1894). As such, the well-pleaded complaint rule makes the plaintiff the master of the claim, allowing the plaintiff to avoid federal jurisdiction by pleading only state claims and ignoring any federal claims he or she might have. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987).

■ Turning to the record of this case, it appears that Delta Dental has chosen to exercise the plaintiff's choice afforded under the well-pleaded complaint rule. The parties recognize, and the Court agrees, that the present dispute could have been brought as a federal antitrust claim under the Sherman Act. Delta Dental has chosen to forego its rights under federal law, however, instead relying exclusively on state law in asserting its claims against Blue Cross. In that light, the case seems to call for a straightforward application of the well-pleaded complaint rule and its corollaries: Delta Dental, as the master of the claim, has chosen to rely exclusively on state law and to litigate in state court— a choice that Blue Cross cannot defeat, notwithstanding that the case could have been brought under the Sherman Act or that federal defenses might be available.

■ Blue Cross argues, however, that an exception to the well-pleaded complaint rule, the "artful pleading" doctrine, brings this case within the Court's removal jurisdiction. The Supreme Court created this exception in *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), where it held that a claim pled under state law "arises under" federal law where federal law completely pre-empts the state cause of action on which the plaintiff relies. *Id.* at 560, 88 S.Ct. at 1237. In such cases, where the only possible relief is federal, the plaintiff cannot defeat the defendant's right of removal by failing to plead the necessary federal claim. *Id.; see also Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23–24, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983) (discussing *Avco* ).

■ Clearly, this original formulation of the artful pleading doctrine is inapplicable to

9. "For the purposes of this section and section 1441 of this title [removal]—(1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has a principal place of business...." 28 U.S.C. § 1332(c) (1994).

10. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1994).

the present matter. There has never been a clear congressional intent to pre-empt state regulation in the field of antitrust law. *See* 1 P. Areeda & D. Turner, Antitrust Law ¶ 208 (1978). Moreover, the state law on which Delta Dental has based its claim, the Rhode Island Antitrust Act, provides that no claim under the Act "shall be barred on the ground that the activity or conduct complained of in any way affects or involves interstate or foreign commerce." R.I.Gen.Laws § 6–36–7(c) (1992). Given this system of joint antitrust enforcement, states retain the ability to regulate commercial activities that takes place within their borders, even if the challenged activity has interstate aspects. *See Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309–10, 51 L.Ed.2d 604 (1977); *Standard Oil Co. v. Tennessee,* 217 U.S. 413, 421–22, 30 S.Ct. 543, 544, 54 L.Ed. 817 (1910).

Nonetheless, Blue Cross asserts that the Supreme Court extended the reach of the artful pleading doctrine in *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). In *Moitie,* the plaintiff's initial federal antitrust action had been dismissed by the federal district court. Instead of appealing, the plaintiff relied on the same facts to assert state law claims of civil conspiracy, unfair competition, fraud, and restitution. This second case was removed to federal court, where the district court denied a motion to remand on the basis of the artful pleading doctrine, finding that the plaintiff's claims were "essentially federal law" claims. While reversing the lower court on the merits, the Ninth Circuit agreed that the claims were sufficiently "federal in nature" to support removal. *See id.* at 395–98 & n. 2, 101 S.Ct. at 2426–28 & n. 2 (discussing history of the case).

While the Supreme Court's opinion in *Moitie* concerns primarily the issue of *res judicata,* the Court in a footnote voiced its approval of the approach taken by the lower courts regarding the question of removal and artful pleading:

We agree that at least some of the claims had a sufficient federal character to support removal. As one treatise puts it, courts "will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum ... [and] occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization." The District Court applied that settled principle to the facts of this case.... [and found] that respondents had attempted to avoid removal jurisdiction by "artful[ly]" casting their "essentially federal law claims" as state-law claims. We will not question here that factual finding.

*Moitie,* 452 U.S. at 397 n. 2, 101 S.Ct. at 2427 n. 2 (citations omitted). There is little doubt that the Supreme Court worked some alteration in the artful pleading doctrine with this footnote, as the Court rendered a state law claim "artfully pled" in the absence of federal pre-emption. *See Travelers Indem. Co. v. Sarkisian,* 794 F.2d 754, 759 (2d Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986) ("Unquestionably, *Federated Stores* made some alteration of the master-of-the-complaint rule.").

■ What remains unclear, however, is "[h]ow far beyond the pre-emption context the Court intended to extend the artful pleading doctrine." *Id.* Generally, circuit courts have limited *Moitie* to its facts, reading the case as expressing only a modest expansion of the artful pleading doctrine. The circuits have viewed *Moitie* as extending artful pleading only to those instances where claims previously filed as federal claims in federal court are resubmitted in state court as state law claims. *See Travelers,* 794 F.2d at 760–61; *Salveson v. Western States Bankcard Ass'n,* 731 F.2d 1423, 1427–29 (9th Cir. 1984). In this light, the extension of artful pleading encompasses a subset of claims that would also be barred by the doctrine of *res judicata*: the state court proceeding would essentially provide the plaintiff with a "second bite" at a claim that has already been dismissed in a previous federal action.[11]

---

11. The Court notes that a few district courts have given *Moitie* a broader reading than these circuit courts. *See Mechanical Rubber & Supply Co. v. American Saw & Mfg. Co.,* 747 F.Supp. 1292,

1294–96 (finding claim "sufficiently federal in character" to support removal, where state antitrust claim could have been brought under federal law), *vacated in part,* 810 F.Supp. 986 (C.D.Ill.

While the First Circuit has not yet ruled on the issue, the Court did address the implications of *Moitie* in *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208 (1st Cir.1987). In discussing the removal of an antitrust claim in *Patriot Cinemas,* the First Circuit noted the language in *Moitie* regarding claims that are "federal in nature" or have a "sufficient federal character to support removal." *Id.* at 217 n. 4. While the Court recognized that this language might have "work[ed] a revolution in the law of federal removal jurisdiction," the Court stated that it could not determine the extent of any such change at that time, as it lacked jurisdiction to do so. *Id.*

The Court went on to suggest, however, that whatever change the Supreme Court intended in *Moitie,* it "may have been overruled *sub silentio* in *Franchise Tax Board,* which so strongly reaffirmed the well-pleaded complaint rule." *Id.* The First Circuit pointed to the Supreme Court's assertion in *Franchise Tax Board* that the law of removal jurisdiction "has remained basically unchanged for the past century." *Franchise Tax Board,* 463 U.S. at 7, 103 S.Ct. at 2845. Implicit in the First Circuit's discussion is that the Supreme Court would not have made such a broad statement had *Moitie* indeed worked a sweeping change in the law of removal jurisdiction. Therefore, while the First Circuit has not decided the issue, it is evident that said Court would read *Moitie* narrowly, at most viewing the case as a modest expansion of the artful pleading doctrine in the vein of the *Travelers* and *Salveson* courts.

In light of this analysis, this Court concludes that the artful pleading doctrine is inapplicable to the present case. Magistrate Judge Boudewyns found that the conduct challenged in Delta Dental's state court complaint took place after the settlement of the prior federal action, a factual finding that this Court will not disturb unless clearly erroneous. As a review of the record confirms that there is adequate support for the

magistrate judge's factual finding, the Court upholds that determination.

Turning to the legal issue, the facts of this case do not call for the application of the artful pleading doctrine. This is not a case where a plaintiff, stymied in prior federal litigation, has recast those same claims under the guise of a state cause of action. As Delta Dental did not raise predatory pricing or cross-subsidization claims in the prior litigation, there were no such claims for Delta Dental to "resubmit" to the state court in the current action. Indeed, given the magistrate judge's factual finding, there was no way that the current claims could have been brought in the prior action, as the challenged conduct had not yet occurred. Therefore, the Court will not invoke artful pleading to deem Delta Dental's state law claims federal claims and thereby justify removal.

The question of whether *res judicata* applies in this case, however, is distinct from the Court's artful pleading analysis, and is left for determination by the state court. It is important to note that artful pleading as extended by *Moitie* and its progeny does not encompass all claims that might be barred by *res judicata.* The two doctrines address separate questions: in the removal/artful pleading context, as discussed herein, a court looks for prior federal claims recast as state claims. For *res judicata,* a court considers whether a second action arises out of the same transaction or series of transactions as a first action. *See Manego v. Orleans Bd. of Trade,* 773 F.2d 1, 5 (1st Cir.1985), *cert. denied,* 475 U.S. 1084, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986) (adopting transactional approach to *res judicata* ). In other words, the net cast by *res judicata* is broader than that of artful pleading—artfully pled claims are only a subset of those claims that would be barred by *res judicata.* Therefore, while the Court concludes that artful pleading is inapplicable, the Court offers no opinion on the broader issue of *res judicata.*

## IV.  Conclusion

For the foregoing reasons, the Court affirms Magistrate Judge Boudewyns' remand

1990) (relevant portion of prior decision not vacated); *Reid v. Walsh,* 620 F.Supp. 930, 932–34 (M.D.La.1985) (federal claims "necessarily pre-

sented" by state securities law claims, where federal lawsuit on same facts filed on same day as state action).

order of February 22, 1996. Accordingly, this matter is remanded to the Rhode Island Superior Court in and for the County of Providence.

It is so ordered.