**Ronald D. RUSSO, Plaintiff,**

v.

**BAXTER HEALTHCARE
CORPORATION,
Defendant.**

**No. Civ.A. 94–555L.**

United States District Court,
D. Rhode Island.

May 26, 1999.

Steven E. Snow, Partridge, Snow & Hahn, Providence, RI, Arthur I. Fixler, Kaplan & Jacobson Inc., Providence, RI, for plaintiff.

Edward L. Gnys, Jr., Armstrong, Gibbons & Gnys, LLP, Providence, RI, John T. Winburn, Kevin J. O'Grady, Ruden, McClosky, Smith, Schuster & Russell, Ft. Lauderdale, FL, for defendant.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

Ronald Russo ("Russo") was an unsuccessful litigant. Now, this Court must decide if he was a culpable one as well.

Russo invented a new type of medical catheter, and he brought this suit because he thought Baxter Healthcare Corporation ("Baxter") had interfered with his ownership. In brief, he thought Baxter had publicized the invention without his permission, thus destroying his right to foreign patents. His complaint alleged that Baxter had violated his rights under the Rhode Island Uniform Trade Secrets Act, had interfered with his prospective business relationships and had negligently injured him by rendering his invention unpatentable in foreign countries.

Senior Judge Raymond Pettine handled the case initially, and he denied two motions for summary judgment by Baxter. In the one published opinion, Judge Pettine held that Russo's claim was not precluded by either res judicata or a release that Russo granted to his former employer. *See Russo v. Baxter Healthcare, Corp.,* 919 F.Supp. 565 (D.R.I.1996) (Pettine, J.). Shortly before Judge Pettine's

retirement, the case was transferred to this writer, who read the pleadings and decided that the case merited a trial rather than more preliminary dispositive motions.

The case did go to trial in May 1997. This writer granted judgment as a matter of law to Baxter under Fed.R.Civ.P. 50(a) when Russo completed his proofs and rested. In Russo's own evidence there was proof that Baxter was not liable, including testimony from a patent expert that Baxter's publicity had not foreclosed Russo's right to foreign patents. Russo's patent attorney had given him bad advice, and that mistake was a rickety base for the entire suit. In March 1998, the First Circuit affirmed the judgment for Baxter. *See Russo v. Baxter Healthcare, Corp.,* 140 F.3d 6, 10–12 (1st Cir.1998).

This case remains before this Court on Baxter's motion for attorneys' fees. It bases its demand on two grounds: that Russo filed suit in bad faith under the Rhode Island Uniform Trade Secrets Act, R.I.Gen.Laws § 6–41–4 ("RIUTSA"), and that Russo failed to admit the truth of matters contained in several requests for admissions under Fed.R.Civ.P. 37(c)(2). On December 2, 1998, Magistrate Judge David L. Martin issued a Memorandum and Order that denied Baxter's motion in part and granted it in part. Both parties appealed the Magistrate Judge's decision.

This Court reviews de novo, but the outcome mirrors Magistrate Judge Martin's decision except as to the single request for admission on which he granted sanctions to Baxter. On that, he clearly erred. This Court denies Baxter's motion in total.

## I. *Facts*

In 1983, Russo began working with a company then called Superior Plastics Products Corporation and later known as Superior Healthcare Corporation ("Superior"). He developed new medical products in return for royalties based upon the success of his inventions. In 1989, Russo developed a new kind of closed-seal tracheal suction catheter, a device that uses an endotracheal tube to clear the airways of patients breathing on a mechanical ventilator. Russo's catheter had unique features, such as a rear irrigation port and a clamp valve, that distinguished it from others on the market.

Russo disclosed his idea for the improved catheter to Superior's President David Brodsky ("Brodsky"). Because Brodsky felt that Superior lacked the ability to market such a product, he sought another company to fill that role. To that end, Brodsky and Baxter discussed an agreement in April 1990 under which Baxter would manufacture and distribute the device. As part of its evaluation of the product, Baxter sent prototypes of the catheter to two clinicians so they could conduct bench trials. Baxter did not require that either clinician sign a confidentiality agreement before doing so.

In May, Brodsky told Russo about his discussions with Baxter, but not about the bench trials. Russo asked that Baxter be required to sign a confidentiality agreement, and Brodsky orally agreed to obtain one. Later in May 1990, Russo stopped working with Superior because of a dispute over money and issues unrelated to this action. Nonetheless, Russo retained some access to Superior's offices and observed that Superior continued to develop his catheter. He also learned in June 1990 that Baxter and Superior had entered into an Exclusive Distribution Agreement (the "Agreement") that granted Baxter an option to obtain rights in the catheter.

Russo acted promptly in response to that discovery, sending two letters to Baxter asserting that he held the rights to the catheter. On June 14, 1990 he also filed an application with the United States Patent and Trademark Office ("PTO") for a patent on the catheter, and on June 25, 1990 he sued Superior and Baxter in Rhode Island Superior Court, seeking an injunction to prevent both companies from implementing the Agreement. Baxter and

Superior promptly countered in July 1990 by submitting their own application to the PTO for a United States patent on the catheter. In addition, Baxter, without Russo's knowledge, conducted additional field trials on the catheter from June to August. As part of those field trials, Baxter sent out samples of the device to 14 hospitals around the United States to solicit practitioner comments. Again Baxter did not require that the participants in its field trials agree to keep the catheter confidential.

Over a year later, in late October 1991, Russo's patent attorney Robert Doherty ("Doherty") received a Notice of Allowance from the PTO informing him that Russo's United States patent application had been approved. Doherty paid the mandatory issuance fee and expected that the PTO would issue the patent within two or three months. In November 1991, Russo discussed filing patent applications in foreign countries with Doherty. They agreed on a tentative list of target countries, and Doherty sought out a consultant in foreign patent law because he lacked sufficient contacts and knowledge to file patents in most foreign countries.

On December 9, 1991, Baxter displayed Russo's closed suction tracheal catheter at the American Association of Respiratory Care convention in Atlanta. Baxter demonstrated the catheter, incorporated it into a sales brochure and took some sales leads on it. Russo did not authorize any of those activities, and he did not discover what Baxter had done until several days after the convention.

Russo immediately told Doherty about Baxter's unauthorized disclosure of his product at the convention, although Russo did not know about the earlier bench trials and field tests. Without performing any research or consulting with his foreign patent expert, Doherty advised Russo that Baxter's disclosures at the convention had destroyed the novelty of his invention and thus made it unpatentable in any foreign country other than Canada or possibly Australia. Doherty told Russo that no foreign patent applications should even be filed, because he believed that no patents could issue after Baxter's publication at the Atlanta convention—or alternatively, that any patents that might issue would be invalid and worthless.[1]

Doherty's legal advice was dead wrong. Under the European Patent Convention and the law of most industrialized countries, an unauthorized disclosure of an invention does not immediately destroy its novelty (and thus foreclose the inventor's ability to patent the invention). Instead, such an adverse disclosure bars only patent applications made more than six months after the date of the disclosure. That being so, Doherty should instead have advised Russo that he could still apply for foreign patents because Baxter's actions at the Atlanta convention would not by themselves have affected Russo's ability to obtain such patents if applied for during the six-month window after December 9, 1991.

What is critical to this litigation is that Russo relied upon Doherty's flawed advice and decided not to seek patents abroad. As a consequence, Doherty did nothing more to prepare any foreign patent applications.

On January 28, 1992 the PTO issued a patent to Russo on his catheter. That unquestionably barred Russo from obtaining any foreign patents because that publication of the catheter—made under the auspices of Russo himself, rather than by some unauthorized third party—made it a part of the "state of the art," so that it was not a "new" invention for foreign patent purposes. That destroyed the invention's eligibility for such patents.

On October 19, 1994, Russo sued Baxter in this Court alleging injury from Baxter's

1. There was one exception: Russo did file for a patent in Canada, reflecting Doherty's advice that Canada did not have a strict novelty requirement. Because that patent application is not the subject of this appeal, nor is it dealt with in the parties' briefs, this Court will not address the subject further.

December 1991 publication of the catheter at the Atlanta convention. During discovery Russo first learned that earlier—in 1990—Baxter had conducted the bench trials and field tests on the catheter without any confidentiality agreements. Russo amended his complaint to encompass those earlier activities and asserted that the initial disclosures (1) had violated his rights under the Rhode Island Uniform Trade Secrets Act, (2) had interfered with his prospective business relationships and (3) had negligently injured him by rendering his device unpatentable in foreign countries.

When Russo rested his direct case at trial, Baxter sought judgment as a matter of law under Rule 50(a). On May 29, 1997, this writer delivered an oral bench opinion granting Baxter's motion on all three counts because Russo had failed to establish that Baxter had either caused his injury or disclosed his trade secret. In addition, this writer determined that the statute of limitations had run on the trade secret count, that Russo had no prospective contractual relationships—thus eliminating the second count—and that Russo's claimed damages were purely speculative in any event.

Russo appealed, and the First Circuit affirmed the dismissal of all counts. *See Russo,* 140 F.3d at 12.

## II. *Standard of Review*

If a party objects to a magistrate judge's recommendation on a motion for attorney's fees, the district court reviews the matter de novo.

The Federal Rules of Civil Procedure require that a motion for attorneys' fees under Rule 54 be treated "under Rule 72(b) as if it were a dispositive pretrial matter." *See* Fed.R.Civ.P. 54(d)(2)(D); Fed.R.Civ.P. 72(b). *See also R.A. v. Department of Children, Youth and Families,* 18 F.Supp.2d 157, 159–60 (D.R.I. 1998).

█ Generally, motions for sanctions pursuant to Rule 37 are heard by magistrate judges as pretrial matters. Their decisions thereto are generally reviewed under the "clearly erroneous or contrary to law" standard. *See Yang v. Brown University,* 149 F.R.D. 440, 442 (D.R.I. 1993). However, a motion for sanctions can cross the line and become dispositive and, therefore, subject to de novo review. *See id.* at 442–43. *See also Conetta v. National Hair Care Corp.,* 182 F.R.D. 403, 405–06 (D.R.I.1998) (discussing standards of review for dispositive and non-dispositive motions). In *Yang,* Senior Judge Pettine found that the sanction crossed that line where the magistrate judge's decision to exclude a witness would vitiate plaintiff's case. *See Yang,* 149 F.R.D. at 442–43.

Sanctions also cross that line where a magistrate judge can impose attorney's fees as part of the penalty. As explained above, the Federal Rules are clear that Congress considered attorney's fee motions to be dispositive. *See* Fed.R.Civ.P. 54(d)(2)(D). Therefore, a magistrate judge's determination on fees and costs under Fed.R.Civ.P 37(c)(2) will be reviewed de novo.

█ In making a de novo determination, the district court "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b); *see also* 28 U.S.C. § 636(b)(1). In reviewing a magistrate judge's recommendations, the district court must actually review and weigh the evidence presented to the magistrate judge, and not merely rely on the magistrate judge's report and recommendation. *See United States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Gioiosa v. United States,* 684 F.2d 176, 178 (1st Cir.1982).

## III. *Bad Faith Under R.I.Gen.Laws § 6–41–4*

### A. *The Legal Standard*

█ Generally, a federal court sitting in diversity applies state substantive law

and federal procedural rules. *See Servicios Comerciales Andinos. S.A. v. General Electric Del Caribe, Inc.*, 145 F.3d 463, 478 (1st Cir.1998). The RIUTSA § 6–41–4 provides "[i]f ... a claim of misappropriation is made in bad faith ... the court may award reasonable attorney's fees to the prevailing party." In defining "bad faith" under the RIUTSA, this Court must look to Rhode Island law.

Therefore, the First Circuit cases cited by defendant do not control this case.[2] Neither the parties nor this Court have found a case that interprets "bad faith" in the context of the RIUTSA. But when looking for analogies, this Court will turn first to the Rhode Island Supreme Court cases, rather than to federal appellate decisions.

 The best evidence of the Rhode Island Supreme Court's thinking appears in cases dealing with discovery violations under R.I.Super.Ct.R.Civ.P. Rule 37(a). That rule allows a trial judge to impose an attorney's fee sanction on a party who has stonewalled and forced an opponent to file a motion to compel. Although the Rule does not specify "bad faith" as a prerequisite to imposing the sanction, the Supreme Court has regularly required it. *See Senn v. Surgidev Corp.*, 641 A.2d 1311, 1320 (R.I.1994); *Limoges v. Eats Restaurant*, 621 A.2d 188, 189–90 (R.I.1993); *Quill Co., Inc. v. A.T. Cross Co.*, 477 A.2d 939, 944 (R.I.1984).

The Rhode Island Supreme Court uses a subjective test for bad faith. *See Quill Co.*, 477 A.2d at 944. In *Quill Company*, the Court noted that bad faith could not exist where "the claim has some legal and factual basis when considered in light of the reasonable belief of the individual making the claim." *Id. See also Senn*, 641

A.2d at 1320 (examining defense counsel's actual conduct).

However, a court can rely on circumstantial evidence to find bad faith. In *Quill Company*, the Court noted that:

> fees may be demonstrated by showing that a defendant's obstinacy in granting a plaintiff his clear legal rights necessitated resort to legal action with all the expense and delay entailed in litigation.

*Quill Co.*, 477 A.2d at 944 (citation omitted). In *Limoges*, the Supreme Court quoted with favor the trial judge's admonitions against plaintiff's counsel: "Your firm filed an objection to things that clearly were discoverable and your firm believed were discoverable and you made this counsel file a motion to compel." *Limoges*, 621 A.2d at 190. The trial judge also said:

> The objections were interposed for delay ... There was a refusal to make discovery for which I can impose consequences and I can impose sanctions under Rule 37 or Rule 11 ... You seem to have a practice or a policy that you just make a blanket objection ... to have 30 days to respond, and then to file a blanket objection as opposed to asking for more time is simply unreasonable.

*Id.* The quote is significant because it is inconceivable that the law firm at issue had a written policy to make blanket objections. The *Limoges* trial judge did not have direct evidence about the lawyers' state of mind when they objected. The trial judge inferred that bad faith from the lawyers' actions and other circumstantial evidence.

Therefore, this Court holds that under Rhode Island law, a court must find subjective bad faith before it can impose sanctions under the RIUTSA. A Court may

---

2. Even if this issue were controlled by federal law, the First Circuit cases cited by defendant are persuasive, not compelling precedent. The cases involved appellate procedure, *see Electronics Corp. of America v. Republic Indus., Inc.*, 507 F.2d 409, 411 (1st Cir.1974), and Fed.R.Civ.P. 11, *see Lancellotti v. Fay*, 909 F.2d 15, 19 (1st. Cir.1990). There is no general rule that the First Circuit will apply an objective standard for bad faith in all cases involving sanctions.

rely on circumstantial evidence, however, to find that bad faith.

## B. *Applied to this Case*

■ This Court found that Russo could not succeed on his claims against Baxter, but it saw no evidence of subjective bad faith on Russo's part. Russo thought that he had a case to pursue against Baxter throughout the trial and even thereafter as evidenced by his appeal. The key evidence that appeared at trial—the fact that Doherty had not done his research and gave bad advice—was as much a surprise to Russo as it was to all the other participants.

Baxter asks this Court to impute bad faith from Russo's total failure of proof. Defendant cites a case from the Northern District of California in which Judge Ronald Whyte inferred bad faith from that plaintiff's complete failure of proof and a failure to conduct a reasonable investigation of its claim. *See VSL Corp. v. General Tech., Inc.,* 46 U.S.P.Q.2d 1356, 1359 (N.D.Cal.1998) (relying on a California statute similar to the RIUTSA). Judge Whyte explained:

> VSL's president at all relevant times had knowledge establishing that the duct product information could not qualify as a trade secret. He knew that the information at issue was distributed without obligations of confidentiality and was not the subject of reasonable secrecy efforts. As in *Stilwell,* from this complete failure of proof, this court infers that VSL must have knowingly prosecuted a specious claim. As in *Stilwell,* this inference is buttressed by the fact that plaintiff was in the best position to assess whether the allegedly misappropriated information was in fact a trade secret. Further, even if VSL did not intentionally pursue a meritless claim, its conduct certainly qualifies as gross negligence or even recklessness. VSL should have conducted a reasonable investigation as to whether the information qualified as a trade secret.

*Id.* at 1360 (citing *Stilwell Dev., Inc. v. Chen,* 11 U.S.P.Q.2d 1328, 1330–31 (C.D.Cal.1989)). Baxter uses *VSL* to illustrate that courts have inferred bad faith from a party's total failure to prove its cause of action where a reasonable investigation would have discovered the flaw.

The *VSL* reasoning, however, is only useful where a judge cannot deduce from direct evidence whether a party acted in bad faith. This writer enjoys the benefit of remembering the litigation, so unlike Magistrate Judge Martin in this case or Judge Whyte in *VSL,* this Court believes *from direct evidence* that Russo acted in good faith to pursue an arguable claim. That belief would outweigh any *VSL*-style inferences. Russo's complaint survived two motions for summary judgment before Judge Pettine, and when the case was transferred, this writer felt that the pleadings warranted a trial on the merits. Material facts were at issue. At trial, this writer observed Russo testify and react to other witnesses.

Objectively, Russo had a colorable claim, as evidenced both by Judge Pettine's refusal to grant summary judgment and by this writer's belief that the case needed to go to trial. This Court believes that Russo subjectively acted in good faith. He and his counsel thought that they could win a judgment against Baxter, as evidenced by their pleadings, their demeanor at trial and their subsequent, unsuccessful appeal to the First Circuit. Baxter is correct that Russo's claim suffered numerous flaws, but those were unclear until live witnesses were subjected to direct and cross examination.

To summarize, Russo failed to prove his claims against Baxter. However, Baxter's triumph at trial does not entitle it to attorney's fees. Russo acted in good faith, and he was entitled to have this Court evaluate his claims even though they all eventually failed. Therefore, this Court will not award Baxter any attorney's fees under the RIUTSA.

## IV. Sanctions Under Fed.R.Civ.P. 37(c)(2)

### A. The Legal Standard

Rule 37(c)(2) instructs a court to impose sanctions where a party fails to admit the truth of any matter and the other party later proves that truth:

> The court shall make the order [for reasonable expenses in making the proof] unless it finds that (A) the request was held objectionable pursuant to Rule 36(a), or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (D) there was other good reason for the failure to admit.

Fed.R.Civ.P. 37(c)(2). Russo relies on the third exception in his effort to escape sanctions.

### B. Applied to this Case

#### 1. The Requests for Admission to which there was an objection.

Unlike Russo, this Court can rely extensively on prior art whenever it finds that useful. Magistrate Judge Martin analyzed this issue seamlessly, so this Court adopts the following language from his Memorandum, with minor changes:

■ On several requests, Baxter did not object to Russo's objections or move to compel any further responses. Where a party has objected to a request for admission the burden is on the requesting party to move for an order to test the validity of the objection. *See* Rule 36, advisory committee's notes, 1970 Amendment: "(3) The requirement that the objecting party move automatically for a hearing is eliminated, and the burden is on the requesting party to move for an order."

■ While the First Circuit has not decided whether a motion to test the validity of an objection is a prerequisite to an award of attorneys' fees under Rule 37(c)(2), some commentators have indicated that it is. See Note, *Proposed 1967 Amendments to the Federal Discovery Rules*, 68 Col.L.Rev. 271, 294 n. 169 (1968) ("the discovering party's failure to make a timely challenge to the objection should bar him from subsequently recovering his expenses"); *See also* 8A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2290, at 710, n. 9 (1994) ("court[s] should consider [an objection] a 'good reason' for failure to admit and hold that it falls within condition (4) of Rule 37(c)"). On the other hand, the Ninth Circuit has rejected the view of these commentators and held that objecting to a request as "compound, ambiguous and vague" will not insulate a party from sanctions under Rule 37(c)(2). *See Marchand v. Mercy Medical Center*, 22 F.3d 933 (9th Cir.1994). The Court in *Marchand* observed that counsel routinely object to such requests and felt that it would be unduly burdensome to require each and every objection to be challenged in order for sanctions to issue. *See Id.* at 938.

Upon reflection, this Court finds that it is in agreement with the views expressed by the commentators and that it is not persuaded by the rationale expressed by the Ninth Circuit in *Marchand*. If a party makes an objection to a request for admission and the requesting party makes no motion to determine the sufficiency of that objection, a strict application of the Ninth Circuit approach could subject the objecting party to sanctions even though the objection may have been meritorious. Moreover, the Ninth Circuit's approach provides an incentive to the requesting party not to seek a determination of the sufficiency of the objection. If the court finds the request objectionable, the requesting party will be barred from obtaining sanctions under Rule 37(c)(2)(A). However, if the requesting party never seeks to test the validity of the objection, that party can later argue that since the request was never held objectionable pursuant to Rule 36(a), sanctions should be imposed.

It is true that a court could look at the validity of the objections when it is asked to impose sanctions, and if it finds them meritorious, deny sanctions as to those requests. However, this approach still poses a problem. While it may appear clear post-trial that an objection was not valid, in fairness to the objecting party, the court should really attempt to determine whether the objection would have been upheld if the requesting party had challenged the objection when it was made. The task of looking back in time to determine whether particular objections would have been upheld fully or partially had they been challenged by the requesting party is not easily performed. Here it would not be necessary if Baxter had challenged the objections when they were first made.[3] This Court declines to undertake a task which was made necessary as a result of Baxter's inaction.

For the reasons explained, this Court concludes that it should not award attorneys' fees where there was an objection to the request for admission and a motion to test the validity of that objection was not filed. The Court finds that the fact that the objection was not challenged constitutes "other good reason for failure to admit" under Rule 37(c)(2). *See* Wright and Miller § 2290, at p. 710. Therefore, Baxter's request for attorneys' fees for the cost of proving the matters asserted in Requests 13, 15, 30, 39, 40, 42, 43, 45, and 46 is denied.

2. *The Requests for Admission that were denied.*

Requests for admissions are not intended for factual discovery that should be done through interrogatories and depositions. They are a cruder device because a party must accept, deny or object to facts phrased by the opposition.

They exist to narrow the issues at trial where the parties unambiguously agree. The fact is that parties in litigation conflict. They believe different things, and they have different interpretations of both words and events. The party that proffers the requests must recognize that its opponent may read those words differently.

Baxter makes a strident argument that this Court should interpret words in the way that Baxter or a certain dictionary sees fit. That is not so. An answering party may always object to vague wording, but where it can reasonably interpret the words in one fashion, it may answer that way. Just because Russo did not object to a word as vague when he signed the responses in 1996 does not mean that he must accept Baxter's interpretation of the word now. Sanctions will only be imposed where the answering party had no reasonable ground to believe that its interpretation would prevail on the matter. *See* Fed.R.Civ.P. 37(c)(2)(C).

This Court does not encourage parties to equivocate over language or to stonewall in order to prolong litigation. However, it accepts that parties will have fundamental disagreements. This Court exists to settle those disputes, and it will not impose sanctions merely because a party failed to prove its case. Losing the case is an enormous sanction, as Russo discovered. As discussed below, Russo denied the requests in 1996 because he had a reasonable belief that Baxter would not be able to prove the facts that it laid out in them. Russo was, in large part, wrong. The trial evidence convinced this Court that the events occurred much as Baxter had described. However, that does not change the fact that Russo reasonably believed— and, based on his blunt pleadings on this

---

**3.** In several of these Requests, Russo replied "Please see objection. Without waiving the foregoing objection and subject to it, the Request is denied." This is poor drafting. A party should admit, object or deny, and to both object to and deny the entire question could create confusion. However, there is no confusion here. Russo objected validly under the rules, and the "denial" is clearly a conditional statement. Russo could have just omitted the second sentence, but that failure did nothing to affect the objections.

motion, still believes—that he should have triumphed.

### a. *The Catheter Illustration (8, 9 & 32)*

Requests No. 8, 9 and 32 concerned two illustrations, including one attached to a Superior Court complaint that Baxter argued successfully was a disclosure of the trade secret. At trial, this Court did find that the catheter drawings were so similar that Russo disclosed his trade secret by attaching it to the Superior Court complaint.

However, the issue here is Russo's belief when he signed the responses in 1996. Russo does not need to agree with this Court's findings. In fact, his appeal to the First Circuit and his objection to this motion are explicit that he does not. On this issue, he thought the Superior Court illustration was of an earlier version of the device, and he had a colorable belief that view would have prevailed at trial. This Court disagreed, but certainly, this Court did not find *that Russo knew* the drawings were legally identical before trial. Therefore, he had an arguable point.

After hearing this case, this Court finds that Russo had a reasonable belief that he would succeed at trial. Therefore, Russo could deny Requests No. 8, 9 and 32 without facing sanctions.

### b. *Russo's Knowledge in 1990 (10, 11, 19, 21 & 29)*

These requests concern Russo's knowledge at various times in 1990 that Baxter had "used" or "acquired" the trade secret or that Baxter had entered into the Agreement with Superior.

Requests No. 10, 11, and 29 were denied because Russo thought in July 1996 that Baxter had not "acquired" or "used" the trade secret because he thought the Agreement was confidential. He thought—and his counsel appears to continue to assume in his memorandum to Magistrate Judge Martin—that "acquire" meant to "own" or control the rights to a product. (*See* Mem. in Supp. of P.'s Objection to D.'s Mot for Attorneys' Fees at 6.) In 1996, Russo thought Baxter had operated confidentially and never exercised its option with Superior, so he thought that it had never acquired or used the trade secret in a way that would have affected his ability to be protected.

Requests No. 19 and 21 were denied because Russo had no knowledge of what Baxter was doing with his invention. He thought the Agreement was confidential and that it was an option for Baxter to distribute the catheters. Therefore, he denied that it was entered into "for the purpose of selling and distributing" (Request No.19) and "to require Baxter to conduct field trials and market the Invention" (Request No.21).

At trial, this Court found that Russo knew enough to have instituted the lawsuit against Baxter more than three years before he did. However, that does not alter what Russo believed in 1996.

After hearing this case, this Court finds that Russo had a reasonable belief that he would succeed at trial on these issues. He employed reasonable definitions for the words at issue and reasonably believed that he would prevail at trial. Therefore, Russo could deny Requests Nos. 10, 11, 19, 21, and 29 without facing sanctions.

### c. *Date of Commencing Action (28)*

This request asked when Russo began this suit. Russo's complaint was filed on October 19, 1994. The request asked about October 24, 1994. Russo's denial was factually correct.

Therefore, Russo could deny Request No. 28 without facing sanctions.

### CONCLUSION

This Court has reviewed this motion de novo because it believes that Congress intended that motions for attorneys' fees to be treated as dispositive. It is not an accident, however, that the outcome is almost identical to Magistrate Judge Mar-

tin's December 2, 1998 determination. Magistrate Judge Martin made a clear error when he awarded attorneys' fees related to Request No. 10, but otherwise, he was precisely correct in his analysis of the legal standards and all other factual decisions.

Therefore, this Court denies Baxter's motion for attorneys' fees in toto.

It is so Ordered.