Jack and Linda KRAFFT, Appellees

v.

**Lawrence M. and Jane A. DOWNEY, Appellants.**

Superior Court of Pennsylvania.

Argued Dec. 4, 2012.

Filed May 17, 2013.

Reargument Denied July 22, 2013.

Paul J. Malizia, Emporium, for appellants.

Vincent A. Coppola, Pittsburgh, for appellees.

BEFORE: DONOHUE, ALLEN and STRASSBURGER *, JJ.

OPINION BY DONOHUE, J.:

Lawrence M. and Jane A. Downey ("the Downeys") appeal from the judgment entered against them following a jury verdict in favor of Jack and Linda Krafft ("the Kraffts"). Specifically, the Downeys challenge the denial of their motion for attorney fees under the Pennsylvania Uniform

_____

* Retired Senior Judge assigned to the Superior Court.

Trade Secrets Act ("the PUTSA"), 12 Pa. C.S.A. §§ 5301–5308. After careful review, we vacate the trial court's order and remand for further proceedings.[1]

The record reflects the following facts and procedural history relevant to this appeal. The Kraffts operated a business called "Framing on Stone," selling pieces of flagstone that portrayed images transferred from photographs and works of art. Linda Krafft learned how to transfer images onto ceramics in 1995 while in Alberta, Canada by taking a course on the subject. After several years of experimenting and fine-tuning the process to work on flagstone, she began selling images she transferred onto flagstone at craft shows.

The Downeys, who were the Kraffts' neighbors and friends, expressed interest in creating and selling the flagstone art. On April 13, 2004, the two parties entered into a "Franchise Contract." In relevant part, the contract permitted the Downeys to use the name "Framing on Stone," and provided that the Kraffts would teach the Downeys the process used to transfer the images onto flagstone and identify the chemicals used in the process in exchange for $20,000.00 plus ten percent of the Downeys' net sales. The contract further prohibited the Downeys from revealing the process used to create the flagstone art to anyone.

The Downeys ceased paying commissions to the Kraffts in 2007. They also stopped using the name "Framing on Stone," and began selling flagstone art, made using the same process, under the name "Rock of Ages." On December 3, 2007, the Kraffts filed the original Complaint in this matter alleging that the Downeys were in breach of contract. On January 4, 2008, the Downeys filed an Answer, New Matter and Counterclaim. The Counterclaim included two counts: breach of contract by the Kraffts and fraudulent inducement based upon the Kraffts' representation that the process used was secret and proprietary.

On January 10, 2008, at the request of the Kraffts, the trial court held an injunction hearing.[2] At that hearing, Linda Krafft testified, *inter alia*, that she was aware that the process she was using to transfer images to flagstone was already "out there," and that she previously investigated having the process patented through an attorney and learned that "[i]t could not be patented." N.T., 1/10/08, at 16, 21. She testified that she nonetheless believed it to be "a secret process," *id.* at 27, because of the steps she took to refine and modify it, *e.g.*, painting the stones first, coating the prints four times, applying the coats in opposite ways, specifying the temperature of the water, sanding the stones, and using oil base. *Id.* at 28. She believed the process to be her own, without conducting any research, based upon the fact that she had "never seen anybody else do it." *Id.* at 27. At that hearing, in opposition to the entry of an injunction against their use of the transfer process, the Downeys presented various exhibits revealing that the process was not only the

---

1. On July 16, 2012, the Kraffts filed a motion to quash this appeal based on the Downeys' alleged violation of numerous procedural rules. On August 28, 2012, this Court issued an Order denying the motion without prejudice to the Kraffts' right to raise the issue again before the merits panel. Order of Court, 8/28/12. The Kraffts failed to do so either in their appellate brief or at oral argu-

ment, and thus, we do not revisit our prior Order of Court.

2. Neither the Complaint in Equity nor request for an injunction appears in the certified record on appeal. Their absence, however, does not hamper our review, as the notes of testimony from the hearing were properly included in the certified record.

subject of an expired patent, but readily discoverable in multiple books and articles available on the internet. *Id.* at 29–31, 33–34.

Following the injunction hearing, the trial court entered an order denying the requested relief. In its findings of facts and conclusions of law accompanying the order, the trial court stated the following:

> While plaintiffs may have refined and made minor changes and improvements in the technology, **the process of transferring images on to stone is in the public domain** as it has been the subject of various expired patents.
>
> \*　　\*　　\*
>
> The process used in creating images on stone by the plaintiffs and defendants is essentially in the public domain, and **is not new or unique to the parties of this agreement.**

Findings of Fact, Conclusions of Law and Discussion on Preliminary Injunction, 2/19/08, at ¶ 7 (Findings of Fact), ¶ 3 (Conclusions of Law) (emphasis added). The Kraffts did not appeal this decision although, pursuant to Rule of Appellate Procedure 311(a)(4), this denial of a request for a preliminary injunction was immediately appealable.

Thereafter, on August 1, 2008, the Kraffts filed an Amended Complaint, raising (I) a violation of the PUTSA, (II) conversion of trade secrets, (III) breach of contract, and (IV) breach of implied duty of good faith. The Downeys filed an Answer, New Matter and Counterclaim to the Kraffts' Amended Complaint on September 22, 2008, averring, *inter alia,* that the Downeys are entitled to attorney's fees because the Kraffts brought claims (I) and (II) ("the Trade Secret Claims") in bad faith. The Kraffts filed a Reply to the New Matter and Counterclaim on October 30, 2008.

On November 20, 2009, the Downeys filed a motion for partial summary judgment on the Trade Secret Claims based upon the Kraffts' inability to prove that the process they used to transfer images to flagstone was a trade secret. On January 4, 2010, the Kraffts signed a stipulation to withdraw the Trade Secret Claims.

On February 10, 2010, the Downeys filed a motion for attorney's fees related to expenses incurred in defending the Trade Secret Claims. On March 17, 2010, the trial court entered an order dismissing the motion without prejudice to the Downeys' ability to raise the issue again at the conclusion of litigation. Following a jury verdict in favor of the Kraffts for breach of contract and against the Downeys for their counterclaims, the Downeys renewed their request for attorney's fees arising from the Trade Secret Claims. On February 14, 2012, the trial court denied their request.

The Kraffts filed a praecipe to enter judgment on February 24, 2012. The Downeys filed a timely notice of appeal on March 14, 2012, and thereafter complied with the trial court's request for a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On appeal, they challenge the trial court's denial of their request for attorney's fees pursuant to the PUTSA. Appellants' Brief at 4.

■ We review a trial court's determination regarding the award of attorney's fees for an abuse of discretion. *Kraisinger v. Kraisinger,* 34 A.3d 168, 175 (Pa.Super.2011). An abuse of discretion requires more than a difference of opinion as to the conclusion reached; rather, discretion is abused "if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias

or ill-will, as shown by the evidence of record." *Id.* (citation omitted).

■ The PUTSA provides, in relevant part, that "[a] court may award reasonable attorney fees, expenses and costs to the prevailing party: (1) if a claim of misappropriation is made in bad faith[.]" 12 Pa.C.S.A. § 5305(1). Neither the PUTSA nor any Pennsylvania appellate court defines the term "bad faith" as it applies to PUTSA claims. While nearly all of the states (as well as the District of Columbia and the U.S. Virgin Islands) have adopted the Uniform Trade Secrets Act ("the UTSA") in some form, very few have defined what constitutes bad faith warranting the grant of attorney's fees. The Downeys, the Kraffts, and the trial court, both below and on appeal, unanimously agree that a two-prong test adopted by a number of federal district courts should be applied. *See* Appellants' Brief at 10–11; Appellees' Brief at 5; Brief in Response to Defendants' Motion for Hearing for Attorney's Fees, 3/15/10, at unnumbered page 3; Defendants' Proposed Findings of Fact and Conclusions of Law, 10/21/11, at 2; Trial Court Opinion, 2/14/12, at 1–2.

The two-prong test advanced by the parties in this case originated in 1989 in the United States District Court for the Central District of California in *Stilwell Dev. Inc. v. Chen,* 1989 WL 418783 (C.D.Cal. Apr. 25, 1989). The court in *Stilwell* was faced with a claim for attorney's fees under California's UTSA ("the CUTSA"), which contains a nearly identical provision for attorney's fees as the PUTSA. *See* Cal. Civ.Code § 3426.4. The court recognized that the California state courts had not yet defined what "bad faith" meant in that context, but rejected the parties' sug-

gestion that it look to federal law for guidance on the meaning. Instead, the *Stilwell* court considered the Commissioners' Comment that accompanied the UTSA's attorney's fee provision, which stated that the award of attorney's fees was intended to deter "specious claims of misappropriation."[3] It found that "deterrence [ ... ] requires conduct more culpable than mere negligence. To be deterrable, conduct must be at least reckless or grossly negligent, if not intentional and willful." *Stilwell Dev. Inc.,* 1989 WL 418783, at *3. It further sought definition for the word "specious" in the Webster's Dictionary: "apparently right or proper: superficially fair, just, or correct but not so in reality[.]" *Id.* (citation omitted). In light of these considerations, the federal district court in *Stilwell* ultimately crafted a two-prong test for bad faith: (1) objective speciousness of the claim and (2) subjective misconduct by the plaintiff in making the claim ("the two prong test"). *Id.*

In 2002, California's Fourth District Court of Appeal adopted as the law of California the two-prong test to determine whether a claim of misappropriation of a trade secret is made in bad faith in *Gemini Aluminum Corp. v. California Custom Shapes, Inc.,* 95 Cal.App.4th 1249, 116 Cal. Rptr.2d 358 (Cal.Ct.App. 4th Dist.2002). In that case, the appellant argued that the test for bad faith should derive from California Code of Civil Procedure section 128.5, which permits the grant of attorney's fees "incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." *Gemini Aluminum Corp.,* 116 Cal.Rptr.2d at 368. The *Gemini* court observed that California courts

---

**3.** Although California did not include the Commissioners' Comment in its attorney's fee provision under the CUTSA, *Stilwell* nonetheless relied upon the Comment contained in the UTSA in fashioning its test for bad faith. We note that Pennsylvania did include the Comment in Section 5305 of the PUTSA.

had interpreted "frivolous" as having both an objective and subjective component— "[w]hether an action is 'frivolous' under Code of Civil Procedure section 128.5 is governed by an objective standard: Any reasonable attorney would agree it is totally and completely without merit. But there must also be a showing of an improper purpose, i.e., *subjective* bad faith on the part of the attorney or party to be sanctioned." *Id.* (emphasis in the original) (quotation and citation omitted). It concluded, however, that it was not the appro-

priate test to determine whether a trade secret claim was made in bad faith, as the CUTSA "does not contain the word 'frivolous.'" *Id.* To the contrary, the CUTSA is specifically concerned with deterring "specious" claims for misappropriation of trade secrets,[4] and actions that are specious "may superficially appear to have merit." *Id.*[5]

While the two-prong test has been widely adopted by federal district courts throughout the country,[6] it has not been

---

**4.** While it is true the CUTSA does not contain the word "frivolous," it likewise does not contain the word "specious." The word "specious" only appears in the Commissioners' Comment that accompanied the attorney's fee provision in the UTSA, which was not adopted by the California Legislature for inclusion in the CUTSA. *See supra,* n. 3.

**5.** We note that the *Stilwell* and *Gemini* courts accepted the Webster's Dictionary definition of "specious": "superficially [ ... ] correct but not so in reality." *Stilwell Dev. Inc.,* 1989 WL 418783, at *3; *Gemini Aluminum Corp.,* 116 Cal.Rptr.2d at 368. The *Gemini* court distinguished a specious claim from one that is frivolous, and found that the CUTSA was specifically concerned with curbing specious (not frivolous) claims. A frivolous claim, however, may be one that is meritless on its face. *See* BLACK'S LAW DICTIONARY 265 (8th ed.2004) (defining "frivolous claim" as "[a] claim that has no legal basis or merit[.]"); *see also In re Farnese,* 609 Pa. 543, 571 n. 20, 17 A.3d 357, 374 n. 20 (2011) ("[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact.") (citation omitted). It is hard to imagine that the UTSA (and the PUTSA) did not intend to deter misappropriation of trade secret claims that are facially meritless.

Nonetheless, in light of the reliance on the stated definition of "specious," we question the need for including the word "objective" in the first leg of the two-prong test. Black's Law Dictionary defines "objective," in relevant part, as "[o]f, relating to, or based on externally verifiable phenomena, as opposed to an individual's perceptions, feelings, or in-

tentions." BLACK'S LAW DICTIONARY 1103 (8th ed.2004). Case law defines "objective" from the point of view of a "reasonable person." *See, e.g., Haggart v. Cho,* 703 A.2d 522, 528 (Pa.Super.1997) (objective test for reasonable diligence for tolling the statute of limitations pursuant to the discovery rule requires "a reasonable person in the plaintiff's position would have been unaware of the salient facts"); *Commonwealth v. Busanet,* —— Pa. ——, 54 A.3d 35, 55 (2012) ("Whether the provocation by the victim was sufficient to support a heat of passion defense is determined by an objective test: whether a reasonable man who was confronted with the provoking events would become 'impassioned to the extent that his mind was incapable of cool reflection.'") (citation omitted). The fact that a claim may seem to be correct but actually has no basis in reality necessarily means that the finding is externally verifiable and not based upon the plaintiff's perception of the claim. Furthermore, to constitute a specious claim, such a claim certainly does not need to be viewed through the eyes of a reasonable person. It appears to us a strange and, at best, redundant pairing of adjectives to define the type of claims to be deterred by an award of counsel fees.

**6.** *See Wyndham Vacation Resorts, Inc. v. Wesley Fin. Group,* No. 3:12–cv–559, 2013 WL 785938, *11 (M.D.Tenn. Feb. 28, 2013); *Knights Armament Co. v. Optical Sys. Tech., Inc.,* No. 6:07–CV–1323–ORL, 2012 WL 3932863, *5 (M.D.Fla. Aug. 20, 2012); *Loparex, LLC v. MPI Release, LLC,* No. 1:09–cv–01411–JMS–TAB, 2012 WL 3065428, *4 (S.D.Ind. July 27, 2012); *Uhlig LLC v. Shirley,* No. 6:08–cv–01208–JMC, 2012 WL 3062659, *2 (D.S.C. July 26, 2012); *Hill v. Best Med.*

implemented by any state court other than in California. The state courts that have defined bad faith in this context have done so using definitions from other areas of their laws and without mentioning or evaluating the propriety of California's two-prong test.[7]

We observe that in 2011, the Federal District Court for the Western District of Pennsylvania adopted the two-prong test in *Hill v. Best Medical Intern., Inc.,* a PUTSA attorney's fees case. The *Hill* court did so based on the number of other federal courts that have applied this test to decide various state UTSA claims, stating:

> Although the PUTSA does not contain a provision directly relating to statutory construction, the enactments of the UTSA by other states frequently include language directing that the statute is to

be 'applied and construed to effectuate its general purpose to make uniform the law with respect to [trade secrets] among the states enacting it.' *See, e.g.,* Cal. Civ.Code § 3426.8, 6 Del. C. § 2008, or Conn. Gen.Stat. § 35–58. In keeping with this understanding, we have been guided by the reasoning of courts from other jurisdictions, especially since the Third Circuit Court of Appeals and the Pennsylvania Supreme Court have not spoken on the issues addressed herein.

*Hill,* 2011 WL 6749036, at *3.

We agree with the *Hill* court that courts in Pennsylvania should adopt a definition of bad faith that is consistent with other states' definitions of bad faith under the UTSA. Although *Hill* correctly observed that the PUTSA did not adopt the statuto-

---

*Int'l, Inc.,* No. 07–1709, 2011 WL 6749036, *4 (W.D.Pa. Dec. 22, 2011); *Aquapower, LC v. Yurth,* No. 2:10–CV–568 TS, 2011 WL 772583, *1 (D.Utah Feb. 28, 2011); *Precision Automation, Inc. v. Technical Services, Inc.,* No. 07–CV707–AS, 2009 WL 1162135, *6 (D.Or. Apr. 28, 2009); *Sun Media Sys., Inc. v. KDSM, LLC,* 587 F.Supp.2d 1059, 1073 (S.D.Iowa 2008); *Rent Info. Tech., Inc. v. Home Depot U.S.A., Inc.,* 268 Fed.Appx. 555, 560 (9th Cir.2008) (Georgia UTSA); *Berry v. Hawaii Exp. Serv., Inc.,* No. 03–00385 SOM/LEK, 2007 WL 689474, *13 (D.Hawai'i Mar. 2, 2007), *aff'd sub nom., Berry v. Dillon,* 291 Fed.Appx. 792 (9th Cir.2008); *Degussa Admixtures, Inc. v. Burnett,* 471 F.Supp.2d 848, 857 (W.D.Mich.2007), *aff'd,* 277 Fed.Appx. 530 (6th Cir.2008); *Norwood Operating Co. v. Beacon Promotions, Inc.,* No. 04–1390, 2006 WL 3103154, *2–3 (D.Minn. Oct. 31, 2006); *Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts,* 222 F.Supp.2d 733, 744 (D.Md.2002).

*But see Russo v. Baxter Healthcare Corp.,* 51 F.Supp.2d 70, 76 (D.R.I.1999) (requiring only a finding of "subjective bad faith" for the grant of attorney's fees under the Rhode Island UTSA); *ANSYS, Inc. v. Computational Dynamics N. Am., Ltd.,* No. 09–cv–284–SM, 2011 WL 499958, *3 (D.N.H. Feb. 10, 2011) (Under New Hampshire's UTSA, "[a] party

pursues a claim in bad faith if the claim is frivolous.").

**7.** *See, e.g., Green Bay Packaging, Inc. v. Preferred Packaging, Inc.,* 932 P.2d 1091, 1098–99 (Okla.1996) (defining "bad faith" under the Oklahoma UTSA as a claim made for "oppressive, abusive or wasteful reasons," using the definition of bad faith from 23 Okla. Stat. 103 (relating to payment of costs and fees for actions asserted in bad faith)); *Ex parte Waterjet Sys., Inc.,* 758 So.2d 505, 509 (Ala.1999) (defining "bad faith" under the Alabama UTSA as it is defined under the Alabama Litigation Accountability Act, which requires the award of attorney's fees "when a claim is brought without substantial justification, either in whole or part"); *Optic Graphics, Inc. v. Agee,* 87 Md.App. 770, 591 A.2d 578, 587–88 (1991) (defining "bad faith" under the Maryland UTSA using its definition espoused by non-UTSA cases as requiring "clear evidence that the action is entirely without color" and made "vexatiously, wantonly, or for oppressive reasons"). Three other state courts—Washington, Virginia, and Ohio—have also examined what constitutes bad faith to warrant the grant of attorney's fees under the UTSA and likewise did not adopt the two-prong test, but did so in non-precedential decisions.

ry construction provision from the UTSA,[8] the Pennsylvania Rules of Statutory Construction require that "[s]tatutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them." 1 Pa. C.S.A. § 1927. In our view, however, it does not appear that the two-prong test garners the support of the majority of other states that have enacted the UTSA and its attorney's fee provision. *Cf. In re Stevenson*, 615 Pa. 50, 40 A.3d 1212, 1221 (2012) ("[P]ronouncements of the lower federal courts have only persuasive, not binding, effect on the courts of this Commonwealth[.]"). As explained, our research reveals that the courts of only one state—California—have adopted this test. *See supra*, n.6. The remaining states that have defined bad faith for the purpose of awarding attorney's fees under the UTSA have not adopted a uniform test. Indeed, the only uniformity among these states' tests is that each of them draws on their own state's pre-existing test for defining bad faith. *See supra*, n.7.

In light of the foregoing, although we do not necessarily find the two-prong test an improper definition of bad faith under the PUTSA, we do not adopt it for application beyond this decision. While the Downeys urge the adoption of this test, they provide no advocacy regarding why it is the appropriate test for bad faith under the PUTSA. Rather, they simply repetitiously quote the recitation of the test from several federal district court cases, never presenting an argument as to why the test best advances uniformity among the states having adopted the UTSA or even addressing the

fact that only one state has adopted the two-prong test. *See* Appellants' Brief at 12–15. Nonetheless, because both parties and the trial court used the two-prong test to frame and resolve this claim, and based upon the unique facts of this case, we likewise use it to decide whether the trial court abused its discretion in reaching its decision in this matter.

■ To reiterate, the two-prong test for bad faith is: (1) the objective speciousness of the claim and (2) subjective misconduct by the plaintiff in making the claim. Here, it is uncontested that the Kraffts' Trade Secret Claims were objectively specious [9] (*see* Appellees' Brief at 5; Appellants' Brief at 11; Trial Court Opinion, 2/14/12, at 2), and no one has challenged, either below or on appeal, that the Downeys were the prevailing party on the Trade Secret Claims. Thus, the only question before this Court is whether the trial court abused its discretion by concluding the Kraffts did not engage in subjective misconduct by pursuing the Trade Secret Claims.

■ "Subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit." *Hill*, 2011 WL 6749036, at *4. "In proving subjective misconduct, a prevailing defendant may rely on direct evidence of plaintiff's knowledge. *Contract Materials Processing, Inc.*, 222 F.Supp.2d at 744. In the absence of direct proof, subjective misconduct may also be inferred from the speciousness of the claim, the plaintiff's conduct during litigation, or evidence that the

---

**8.** Section 8 of the UTSA, which is not part of the PUTSA, directs that the UTSA "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this [Act] among states enacting it." UNIF. TRADE SECRETS ACT § 8.

**9.** "Objective speciousness exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim." *FLIR Sys., Inc. v. Parrish*, 174 Cal.App.4th 1270, 95 Cal.Rptr.3d 307, 313 (Cal.Ct.App. 2d Dist.2009).

plaintiff made the claim for an improper purpose, *e.g.*, to harass the opposing party or with the intent of causing unnecessary delay." *Gemini Aluminum Corp.*, 116 Cal.Rptr.2d at 369.

Pursuant to the PUTSA, a "trade secret" is defined as:

Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and **not being readily ascertainable** by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa.C.S.A. § 5302 (emphasis added). "Information is readily ascertainable if it is available in trade journals, reference books, or published materials." *Id.*

Pennsylvania courts have employed several factors to determine whether a process may be afforded trade secret status, including "the extent to which the information is known outside of his business[.]" *Crum v. Bridgestone/Firestone N. Am. Tire, LLC*, 907 A.2d 578, 585 (Pa.Super.2006). Furthermore, Courts have consistently held that information disclosed in a patent cannot be a trade secret. *See, e.g., Felmlee v. Lockett*, 466 Pa. 1, 11, 351 A.2d 273, 278 (1976) ("the very nature of the patent publication [has] been consistently held to work a destruction of any trade secret disclosed therein"); *Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 393 F.Supp.2d 348, 355 (W.D.Pa.2005) ("a trade secret revealed in an expired patent is no longer a secret").

Without discussion of the definition of a trade secret, citation to authority, or recognition of its prior order denying the Kraffts'· request for injunctive relief, the trial court found the Kraffts' filing of the Trade Secret Claims did not constitute subjective misconduct. Trial Court Opinion, 2/14/12, at 2–3. The trial court based its conclusion on Linda Krafft's testimony about the work she put into coming up with a modification of the process for transferring the images to flagstone and the Kraffts' "honest[ ] belie[f] that they had created the process." *Id.* The trial court explained the Kraffts' stipulation to withdraw the Trade Secret Claims by finding that "[a]t some point in time, it obviously dawned on the Kraffts that while they had created a process, it was by no means unique and in fact was the subject of an expired patent." *Id.*

The trial court's conclusion flies in the face not only of the facts of record, but of the definition, recognized by the trial court, of the "subjective misconduct" leg of the two-prong test. There was no basis, under existing case law or the law of this case, for the Kraffts to include the Trade Secret Claims in their Amended Complaint. Contrary to the trial court's finding, the record reflects that the Kraffts were aware, **prior** to filing the Trade Secret Claims, that the process was the subject of an expired patent and that variations of the process were readily available on the internet and in bookstores. Furthermore, and even more incredibly, the Kraffts filed their Amended Complaint after the trial court found as a matter of fact **and** as a matter of law that the process used by the Kraffts was in the public domain, and that there was nothing new, unique, or proprietary about it. In other words, the Kraffts filed the Trade Secret Claims after receiving a judicial ruling that

the process was not a trade secret.[10]

Simply because the Kraffts took a great deal of time to make what the trial court determined to be minor, non-proprietary changes to the existing process and told a heartfelt story of the work put into the process does not mean it was not "readily ascertainable by proper means" by the general public. To the contrary, that the process was available in books and other published materials is the definition of "readily ascertainable." 12 Pa.C.S.A. § 5302. In fact, the record reflects that the process of transferring images to flagstone was ascertainable to anyone with access to the internet, a bookstore, or the library, which the Kraffts knew prior to including the Trade Secret Claims in the Amended Complaint.

The Kraffts argue that the Downeys' claim of subjective misconduct fails because the Downeys also referred to the process they used to make flagstone art as "proprietary," and thus Linda Krafft "could also genuinely believe that her own trial-and-error process was proprietary[.]" Appellees' Brief at 6–7 (citing Defendants' Answer to Complaint in Equity, 1/4/08, at ¶ 8).[11] Whether or not the Downeys also erroneously believed their process to be proprietary or simply used the term in an imprecise manner is irrelevant to our assessment of whether the Kraffts acted with the requisite bad faith in bringing the Trade Secret Claims under the two-prong test advanced. As noted, "subjective misconduct," a term of art, is established, *inter alia,* when there is direct evidence that the plaintiff knew that the claim for trade secret misappropriation was meritless. *Contract Materials Processing, Inc.,* 222 F.Supp.2d at 744. There is direct evidence in this case that prior to filing the Trade Secret Claims, the Kraffts were aware that the process used was the subject of an expired patent, which therefore precluded the process from being a trade secret as a matter of law. *See* N.T., 1/10/08, at 16, 21; *Felmlee,* 466 Pa. at 11, 351 A.2d at 278.

In summary, not only did the Kraffts have irrefutable evidence that the process was not a trade secret, but the trial court made a clear determination that the process was not and could not be a trade secret when it denied their request for injunctive relief. There is no question that the Kraffts were aware that they did not possess a trade secret when they filed the Trade Secret Claims. In spite of that knowledge, they included the Trade Secret Claims in their Amended Complaint.[12]

---

**10.** As noted *supra,* the Kraffts did not appeal the trial court's order denying their request for a preliminary injunction. Although interlocutory, an order denying a party's request for injunctive relief is appealable as of right. Pa.R.A.P. 311(a)(4). When the Trade Secret Claims were filed, the trial court's factual and legal conclusion on this issue were the law of the case.

**11.** The Downeys' Answer to Complaint in Equity does not appear in the certified record on appeal. Rather, the Kraffts appended this document (and others) to their appellate brief. "Under our Rules of Appellate Procedure, those documents which are not part of the 'official record' forwarded to this Court are considered to be non-existent[.]  [ ... ]

[T]hese deficiencies may not be remedied by inclusion in a brief [or] a reproduced record." *Lundy v. Manchel,* 865 A.2d 850, 855 (Pa.Super.2004) (citation omitted). Because of the manner by which we resolve this argument, however, its absence does not impede our review.

**12.** As noted, we have not adopted the two-prong test for bad faith employed by the trial court for application in future PUTSA attorney's fees claims. The test has taken hold in federal trial courts with precious little analysis. Without advocacy and a thorough analysis of other available alternatives, we refuse to join the parade. We apply the test to this case because we are confident, given the clear and highly idiosyncratic facts at hand, the

Therefore, based upon our review of the record, we are compelled to reverse the decision of the trial court and remand for a determination of the amount of attorney's fees owed by the Kraffts relating to the Trade Secret Claims.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

STRASSBURGER, J., files a Dissenting Opinion.

## DISSENTING OPINION BY STRASSBURGER, J.:

Because the Majority improperly judges subjective bad faith by an objective standard instead of applying the appropriate standard of review to the trial judge's findings, I respectfully dissent.

"Our standard of review of an award of attorneys' fees is well settled: we will not disturb a trial court's determinations absent an abuse of discretion. A trial court has abused its discretion if it failed to follow proper legal procedures or misapplied the law." *Miller v. Miller*, 983 A.2d 736, 743 (Pa.Super.2009).

The question is whether the learned trial court in the instant case abused its discretion in finding a lack of bad faith on the part of the Kraffts.

> Good faith, or its absence, involves a factual inquiry into the plaintiff's subjective state of mind: Did he or she believe the action was valid? What was his or her intent or purpose in pursuing it? A subjective state of mind will rarely be susceptible of direct proof; usually the

trial court will be required to infer it from circumstantial evidence. [B]ad faith means simply that the action or tactic is being pursued for an improper motive. Thus, if the court determines that a party had acted with the intention of causing unnecessary delay, or for the sole purpose of harassing the opposing side, the improper motive has been found, and the court's inquiry need go no further.

*Gemini Aluminum Corp.*, 95 Cal.App.4th at 1263, 116 Cal.Rptr.2d at 369 (emphasis, quotations, and citations omitted). "A court may find subjective misconduct by relying on direct evidence of plaintiff's knowledge during certain points in the litigation and may also infer it from the speciousness of plaintiff's trade secret claim and its conduct during litigation." *Computer Econs., Inc. v. Gartner Group, Inc.*, 1999 WL 33178020, *6 (S.D.Cal. December 14, 1999)

There is simply no evidence here that Kraffts engaged in subjective misconduct by bringing and maintaining their misappropriation claims. The Kraffts correctly note that the trial court, which observed the parties throughout the litigation, "was in the best position to determine whether Mr. and Mrs. Krafft acted with a subjective state of mind that warranted imposition of attorney fees." Kraffts' Brief at 5. Based upon its observation and interaction with the parties, and its credibility determinations, the trial court concluded that the Kraffts genuinely believed that Mrs. Krafft's experimentation resulted in a unique process. *See* Trial Court Opinion, 2/14/2012, at 2–3 (pages unnumbered).

---

outcome would be the same under other tests for bad faith conduct utilized in Pennsylvania as a basis for the award of attorney's fees. *See, e.g., Morris v. DiPaolo*, 930 A.2d 500, 501 n. 1 (Pa.Super.2007) (stating that Pennsylvania Rule 1023.1 and Federal Rule 11 "provide for, *inter alia*, sanctions for legal pleadings

filed in bad faith"); 42 Pa.C.S.A. § 2503(9) (providing counsel fees for an action commenced, *inter alia*, in bad faith); *Thunberg v. Strause*, 545 Pa. 607, 682 A.2d 295, 299 (1996) (defining "bad faith" under Section 2503(9) as fraud, dishonest, or corrupt).

Nor does the evidence offered by the Downeys compel a result that the Kraffts were reckless in failing to accept that their claims lacked merit before the Downeys put all their cards on the table with their motion for partial summary judgment.[1] That the Kraffts filed their claim after the Downeys provided an expert opinion unfavorable to the Kraffts certainly does not evidence recklessness; nearly all defendants obtain favorable expert reports regardless of the strength of the plaintiffs' cases. The additional discovery requested by the Kraffts after the Downeys' motion for a protective order was granted was related to the Downeys' new matter and counterclaims, as well as the Kraffts' claims of breach of contract and unjust enrichment based upon the fact that the Downeys "clearly learned a process to transfer and sell artwork on stone, together with instructions and marketing advice, advice as to handling the stones and methods, procedures or places to ... market and sell the stones." Motion for Additional Discovery and for Declaratory Judgment, 4/19/2010, at ¶ 16. After the Downeys filed their motion for partial summary judgment, setting forth all the evidence demonstrating that the Kraffts could not prevail on their UTSA claims, the Kraffts voluntarily agreed to discontinue those claims. They then proceeded to trial, at which the jury concluded that the Downeys breached the contract and the Kraffts were guilty of neither breach nor fraudulent inducement. This evidence does not compel a finding of recklessness. *Accord Pixion, Inc. v. PlaceWare Inc.,* 2005 WL 3955890 (N.D.Cal. April 22, 2005) (finding "the record entirely devoid of evidence of subjective bad faith on plaintiff's part" where the plaintiff's trade secret claims arose out of the same set of facts as a valid breach of contract claim, and noting "[w]hile the Court ultimately disagreed with [the plaintiff's] arguments, plaintiff's maintaining of its position is hardly evidence of improper motive.").

Based upon this record, the Majority should have relied upon on the trial court's credibility determinations and fact finding regarding the Kraffts' subjective state of mind; noted the utter lack of evidence that the Kraffts acted with any improper motive; and, accordingly, concluded that the trial court did not abuse its discretion in denying attorney's fees to the Downeys.

It is clear from the extensive dicta in the Majority Opinion that the Majority is not fond of the objective/subjective test that has been applied by myriad courts which have considered UTSA claims for attorneys' fees. *See, e.g., Gemini Aluminum Corp., supra; Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts,* 222 F.Supp.2d 733, 744 (D.Md.2002); *Knights Armament Co. v. Optical Systems Technology, Inc.,* 2012 WL 3932863 (M.D.Fla. August 20, 2012); *Hill v. Best Medical Intern., Inc.,* 2011 WL 6749036 (W.D.Pa. December 22, 2011); *Berry v. Hawaii Exp. Service, Inc.,* 2007 WL

---

**1.** The Majority makes much of the fact that the Kraffts pursued their trade secret claims despite having been denied a preliminary injunction. *See* Majority Opinion at 337–38. However, the Majority fails to recognize that "a decision regarding a preliminary injunction is not binding for purposes of a final adjudication." *Buck Hill Falls Co. v. Clifford Press,* 791 A.2d 392, 397 (Pa.Super.2002). *See also Philadelphia Fire Fighters' Union, Local 22, Intern. Ass'n of Fire Fighters, AFL–* *CIO v. City of Philadelphia,* 901 A.2d 560, 565 (Pa.Cmwlth.2006). ("The preliminary injunction concludes no rights and is a final adjudication of nothing. Therefore, any legal conclusions that [the] common pleas [court] made in the context of granting a preliminary injunction to maintain the status quo could **not constitute a final adjudication as to the merits of any issue between the parties.**") (internal quotations and citations omitted; emphasis added).

689474 (D.Hawai'i March 2, 2007); *Degussa Admixtures, Inc. v. Burnett,* 471 F.Supp.2d 848, 858 (W.D.Mich.2007), *aff'd,* 277 Fed.Appx. 530 (6th Cir.2008).

Nonetheless, the Majority purports to apply the two-prong test in the instant case. *See* Majority Opinion at 336. In holding that the Kraffts are guilty of acting in bad faith because they should have known that they did not have a case, the Majority has made subjective bad faith the same as objective bad faith. Thus, it is the Majority, not the trial court, that has misapplied the law.